IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

KIM SAMMONS, *individually and as the Executrix of the Estate of Eric Sammons*,

Plaintiff,

v.                                         CIVIL ACTION NO.   2:23-cv-00236

JAMES ARMSTRONG, et al.,

Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *EMA Express LLC's Motion to Dismiss Plaintiff's Amended Complaint* (Document 38), the *Memorandum of Law in Support of Defendant EMA Express, LLC's Motion to Dismiss* (Document 39), *Plaintiff's Response in Opposition to EMA Express, LLC's, Motion to Dismiss Plaintiff's Amended Complaint* (Document 42), and *Defendant EMA Express, LLC's Reply to Plaintiff's Response in Opposition to EMA Express, LLC's Motion to Dismiss Plaintiff's Amended Complaint* (Document 43).   In addition, the Court has reviewed the Plaintiff's *Amended Complaint* (Document 27).   For the reasons stated herein, the Court finds that the motion to dismiss should be granted in part and denied in part.

**FACTUAL ALLEGATIONS**

The Plaintiff is Kim Sammons, Executrix of the Estate of her late husband, Eric Sammons. The Defendants are James Armstrong, Armstrong Trucking 1, LLC ("Armstrong Trucking"), and EMA Express, LLC ("EMA").   Mr. Sammons was a West Virginia citizen.   Mr. Armstrong is a

Florida resident and citizen. Armstrong Trucking's members are citizens of the state of Florida. Likewise, EMA's members are solely citizens of Florida. Thus, for diversity purposes, both Armstrong Trucking and EMA possess Florida citizenship.[1]

On October 7, 2021, Mr. Sammons was driving on U.S. Route 52 in a red Chevrolet Cruze. As he turned onto U.S. Route 119, he was cut off by Mr. Armstrong, who had been driving northbound on Route 119 in a white tractor-trailer. At some juncture, both vehicles stopped on Route 119, at which time Mr. Sammons exited his vehicle and approached Mr. Armstrong's vehicle. Mr. Armstrong rolled down his window and the two men began arguing. Sometime thereafter, Mr. Armstrong retrieved a pistol from inside the cab of his vehicle and fired one shot into Mr. Sammons' upper chest, killing him. At the time, Mr. Armstrong was operating his tractor-trailer in furtherance of interstate commerce as an employee, agent, or representative of Defendants Armstrong Trucking and EMA (the "Defendant Trucking Companies"). His firearm was loaded, directly accessible from the passenger compartment, and not contained in a locked container other than the glove compartment or console of his vehicle.

The Plaintiff contends that the Defendant Trucking Companies knew or should have known that Mr. Armstrong possessed and carried a loaded and accessible firearm in the passenger compartment of his vehicle, which firearm was not contained in a locked container other than the glove compartment or console. The Plaintiff brings claims against all Defendants for negligence

---

[1] "For purposes of diversity jurisdiction, the citizenship of a limited liability company (such as [Armstrong Trucking or EMA]) is determined by the citizenship of all of its members." *Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (citing *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 (4th Cir. 2004)). The Amended Complaint applies the test for determining the citizenship of corporations rather than that of LLCs. On October 27, 2023, the Court ordered her to show cause why this matter should not be dismissed for lack of subject matter jurisdiction. (Document 44.) The Plaintiff responded to clarify Armstrong Trucking and EMA's respective citizenship under the appropriate test. (Document 45.) Inasmuch as the Defendant LLCs' citizenship has been confirmed with their respective counsel and clarified for the Court under the appropriate standard, the Court will discharge the Show Cause Order.

(Count I); gross negligence (Count II); negligent hiring, supervision, and retention (Count III); and intentional infliction of emotional distress (Count IV).

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal*, 556 U.S. at 679. Furthermore,

the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis*, 588 F.3d at 193 (quoting *Twombly*, 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis*, 588 F.3d at 193 (quoting *Twombly*, 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

**DISCUSSION**

EMA contends dismissal is appropriate because West Virginia does not recognize the Plaintiff's claims as "viable" causes of action. (Def.'s Mem. at 3) (Document 39.) Specifically, regarding the Plaintiff's negligence-based causes of action, EMA argues that she has failed to allege a "legal duty imposed by law" which EMA owed to Mr. Sammons. (*Id.*) In addition, EMA asserts that the Plaintiff "has failed to plead any facts to support or make plausible" her claim for intentional infliction of emotional distress. (*Id.*) The Plaintiff responds that her negligence-

4

based claims are "well-established in common law" and recognized by West Virginia precedent. (*See* Pl.'s Resp. at 6) (Document 42.)   Insofar as EMA appears to argue that the Plaintiff's claims require "a state or federal statutory or regulatory basis," the Plaintiff responds that such an argument "confounds common law negligence and *prima facie* negligence arising from a violation of a statute" and urges the Court to afford it no weight.   (*Id.* at 5–6.)   She maintains that she has alleged sufficient facts to support her claim that EMA breached a duty to Mr. Sammons, and that her related vicarious liability and intentional infliction of emotional distress claims are plausibly pled.   (*Id.* at 6–9.)   EMA reiterates that the Plaintiff has not plausibly alleged "the existence of a relationship giving rise to a duty by EMA" to Mr. Sammons and argues that the Amended Complaint provides only formulaic recitations of the elements of each cause of action.   (*See* Def.'s Reply) (Document 43.)

  A. Count I: Negligence

To succeed on a negligence claim, the plaintiff must establish by the preponderance of the evidence that (1) "the defendant owes [the plaintiff] a duty," (2) "there was a negligent breach of that duty," and (3) "injuries received by the plaintiff resulted proximately from the breach of the duty."   *Jones v. Logan Cnty. Bd. of Educ.*, 881 S.E.2d 374, 383 (W. Va. 2022) (citing *Webb v. Brown & Williamson Tobacco Co.*, 2 S.E.2d 898, 899 (W. Va. 1939)).   Relevant here,

> the determination of whether a defendant in a particular case owes a duty to the plaintiff is not a factual question for the jury; rather, "[t]he determination of whether a plaintiff is owed a duty of care by the defendant must be rendered as a matter of law by the court."

*Aikens v. Debow*, 541 S.E.2d 576, 580 (W. Va. 2000) (quoting *Jack v. Fritts*, 457 S.E.2d 431, 435 (W. Va. 1995)).

"The existence of a duty intertwines with the foreseeability of the injury." *City of Charleston, W. Virginia v. Joint Comm'n*, 473 F. Supp. 3d 596, 620 (S.D. W. Va. 2020) (Copenhaver, J.). "[F]oreseeability of risk is a primary consideration in determining the scope of a duty an actor owes to another." *Aikens*, 541 S.E. 2d at 581 (citing *Robertson v. LeMaster*, 301 S.E.2d 563, 568 (W. Va. 1983)). The Supreme Court of Appeals has explained the importance of foreseeability as follows:

> The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?

Syl. Pt. 3, *Sewell v. Gregory*, 371 S.E.2d 82, 83 (W. Va. 1988).

In the Amended Complaint, the Plaintiff alleges that the Defendants—including EMA—had a duty "not to contribute to, nor cause serious injury resulting in death to other members of the public, inclusive of Mr. Sammons, in the operation of their motor vehicle." (Am. Compl. ¶ 27) (Document 27.) EMA allegedly breached this duty by permitting Mr. Armstrong to possess a firearm within its tractor-trailer while he operated it on the roadways and by failing to institute or otherwise enforce a policy prohibiting or monitoring firearm possession in its vehicle. (*Id.* ¶¶ 28, 29.) EMA does not explicitly challenge the foreseeability of the circumstances of this case.[2] Nevertheless, EMA maintains that the Plaintiff has neither provided a "legal basis"[3] for the alleged

---

[2] Indeed, neither party addresses the fundamental element of foreseeability as it pertains to establishing any duty EMA allegedly owed to Mr. Sammons.

[3] The Court does not lend weight to EMA's argument that the Plaintiff must assert claims "based on legitimate violations of federal or state statutes or regulations" to plead "viable" causes of action. (*See* Def.'s Mem. at 5.) EMA offers no legal basis for this assertion. As outlined herein, West Virginia recognizes each of the Plaintiff's claims as legitimate causes of action. However, it is the Plaintiff's burden to allege sufficient facts to plausibly plead such claims in her Amended Complaint.

duty nor pled facts to support her "conclusory statement" that EMA breached that duty. (*See* Def.'s Mem. at 4.)

The Plaintiff urges the Court to consider the Northern District's opinion in *Sayers v. Antero Res. Corp.*, No. 1:14CV140, 2015 WL 520414 (N.D. W. Va. Feb. 9, 2015), as instructive. However, the cases are factually distinguishable. In *Sayers*, the plaintiff was involved in a car accident with a truck driver on the defendant's well site and alleged that the defendant breached a duty to travelers to ensure safe trucking activities on the roads over which the defendant exercised control. Here, Plaintiff contends Mr. Armstrong shot Mr. Sammons on an interstate highway after the two men stopped their vehicles and Mr. Sammons exited his vehicle to engage Mr. Armstrong in argument. The Plaintiff offers no further information to establish that EMA could reasonably anticipate (or foresee) the resulting harm to Mr. Sammons when EMA does not exercise control over the interstate and the incident occurred when Mr. Armstrong's vehicle was stopped. Thus, accepting as true all factual allegations in the Amended Complaint and drawing all reasonable inferences therefrom in the Plaintiff's favor, the Court finds that the Plaintiff has not alleged sufficient facts to plausibly plead a negligence claim directly against EMA.

      B.      *Count II: Gross Negligence*

"Ordinary negligence and gross negligence generally involve the same basic elements, differing only in the degree of actionable inattention on the defendant's part." *City of Charleston*, 473 F. Supp. at 625 (citing *Wood v. Shrewsbury*, 186 S.E. 294, 296–97 (W. Va. 1936) (Where the plaintiff seeks to establish gross negligence, he must present "affirmative proof tending to magnify the negligence.")); *see also Rutecki v. CSX Hotels, Inc.*, 290 F. App'x 537, 542–43 (4th Cir. 2008) ("While the West Virginia Supreme Court of Appeals has never provided its own definition

7

of gross negligence, it has interpreted Virginia law to define gross negligence as the 'degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another.'" (quoting *Dodrill v. Young*, 143 W.Va. 429, 102 S.E.2d 724, 730 (1958))).

Inasmuch as the Court has determined that the Plaintiff has not plausibly pled a negligence claim directly against EMA, the Court further finds that the factual allegations are not sufficient to support a claim against EMA for gross negligence. The lack of foreseeability or duty of care precludes any showing that EMA was grossly negligent. Therefore, Count II must also be dismissed.

    C.    *Vicarious Liability as to Counts I and II*

The Plaintiff also alleges that EMA is vicariously liable as an employer for the negligent and grossly negligent acts of its employee, Mr. Armstrong. (*See id.* ¶¶ 14, 32, 40.) EMA maintains that it did not employ him. (Def.'s Mem. at 4.) Regarding vicarious liability, "[t]he fundamental rule in West Virginia is that if it can be shown that an individual is an agent and if he is acting within the scope of his employment when he commits a tort, then the principal is liable for the tort as well as the agent." *Courtless v. Jolliffe*, 507 S.E.2d 136, 139–40 (W. Va. 1998) (quoting *Barath v. Performance Trucking Co., Inc.*, 424 S.E.2d 602, 605 (W. Va. 1992)). More specifically,

> The universally recognized rule [in West Virginia] is that an employer is liable to a third person for any injury to his person or property which results proximately from tortious conduct of an employee acting within the scope of his employment. The negligent or tortious act may be imputed to the employer if the act of the employee was done in accordance with the expressed or implied authority of the employer.

*Id.* at 140 (quoting *Griffith v. George Transfer & Rigging, Inc.*, 201 S.E.2d 281, 287 (W. Va. 1973)). Moreover, under West Virginia law, the questions as to whether a person is an employee and whether an act is performed within the scope of employment are necessarily fact-determinative, and thus more appropriately considered at summary judgment. *See* Syl. Pt. 1, *Spencer v. Travelers Ins. Co.*, 133 S.E.2d 735 (W. Va. 1963); *Griffith*, 201 S.E.2d at 288.

Accepting as true all factual allegations in the Amended Complaint and drawing all reasonable inferences therefrom in the Plaintiff's favor, the Court finds that the Plaintiff has plausibly alleged a vicarious liability claim against EMA as to Counts One and Two based upon the alleged existence of an employer-employee relationship between EMA and Mr. Armstrong, Mr. Armstrong's operation of the tractor-trailer in furtherance of that employment, and his alleged propensity for carrying a firearm while driving.

    D.    *Count III: Negligent Hiring, Supervision and Retention*

EMA argues that the Plaintiff's allegations regarding the negligent hiring, supervision and retention of Mr. Armstrong are nothing more than legal conclusions which provide neither a "legal basis for any alleged duty" nor sufficient facts to show a breach. (Def.'s Mem. at 4–5.) The Plaintiff broadly responds that she has sufficiently pled her claim, and that any underlying legal duty to Mr. Sammons is "not required to be expressed to such a degree at the pleading stage." (*See* Pl.'s Resp. at 7.) EMA maintains the Plaintiff has failed to sufficiently allege (1) that EMA employed Mr. Armstrong, (2) that EMA had a duty to investigate Mr. Armstrong's history, (3) that EMA had a duty to train, supervise and monitor Mr. Armstrong as to firearm possession in its vehicles, and (4) that EMA should have reasonably foreseen that Mr. Armstrong would possess a

9

firearm in his vehicle. (Def.'s Reply at 6.)[4] The Court will address the Plaintiff's negligent hiring and retention claims before addressing her negligent supervision claim.

To prevail on a negligent hiring or retention claim, the Plaintiff must establish that the employer failed "to conduct a reasonable investigation into the employee's background vis a vis the job . . . and the possible risk of harm." *State ex rel. W. Virginia State Police v. Taylor*, 499 S.E.2d 283, 289 n.7 (W. Va. 1997); *see also McCormick v. W. Virginia Dept. of Pub. Safety*, 503 S.E.2d 502, 506 n.5 (W. Va. 1998). Otherwise stated, the question is: "should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?" *Id*. The duty with respect to hiring increases "as the risks to third persons associated with a particular job increase." *McCormick*, 503 S.E.2d at 507 (1998).

The Plaintiff has not pled sufficient facts to establish a claim of negligent hiring and/or retention. The Plaintiff alleges only that EMA "failed to investigate or adequately investigate" Mr. Armstrong's "history" prior to employing and permitting him to operate their vehicles. (Am. Compl. ¶ 42.) Although "detailed factual allegations" are not required, the Amended Complaint is devoid of the "further factual enhancement" necessary to support the Plaintiff's assertions. *See Twombly*, 550 U.S. at 555, 557 (2007); *see also, e.g.*, *Merritt v. Casto*, No. 2:22-CV-00556, 2023 WL 2589679, at *6 (S.D. W. Va. Mar. 21, 2023) (Berger, J.) (facts sufficient where plaintiff alleged that employer hired/retained employee despite knowledge of employee's prior dangerous misconduct and that reasonable supervisor would have known that hiring/retaining employee would result in future such incidents). Without more, the Plaintiff has not sufficiently pled that

---

[4] The Court notes that the parties' briefing is devoid of controlling or persuasive authority regarding the Plaintiff's claim for negligent hiring, supervision, and retention. Counsel for the parties are advised that best practice is to provide the Court with more than ipse dixit in future filings.

EMA should have reasonably foreseen the risk of harm caused by hiring or retaining Mr. Armstrong.

EMA likewise argues that the Plaintiff has not alleged sufficient facts or provided a "legal basis for any alleged duty" to indicate that it failed to properly train, supervise, or monitor Mr. Armstrong. "Under West Virginia law, negligent supervision claims must rest upon a showing that the employer failed to properly supervise its employees and, as a result, those employees proximately caused injury to another." *Ferrell v. Santander Consumer USA, Inc.*, 859 F. Supp. 2d 812, 818 (S.D. W. Va. 2012) (Copenhaver, J.) (citing *Taylor v. Cabell Huntington Hosp., Inc.*, 538 S.E.2d 719, 725 (W. Va. 2000)).

For the same reason that her claims of negligent hiring and retention are inadequate, the Plaintiff's negligent training, supervision and monitoring claims are inadequately alleged. The Plaintiff alleges that EMA failed to properly "train, supervise and monitor employees, agents, or representatives with respect to firearm possession and use while operating their vehicles" because it "knew or should have known" that Mr. Armstrong carried a loaded and accessible firearm while driving. (Am Compl. ¶¶ 42, 4.) As the Court noted above, the lack of further factual enhancement renders the Plaintiff's allegations conclusory and insufficient to establish a duty on EMA's part to take reasonable supervisory action with respect to Mr. Armstrong. *See, e.g.*, *Fields v. King*, 576 F. Supp. 3d 392, 407 (S.D. W. Va. 2021) (Johnston, C.J.) (Plaintiff's "factual allegations, taken as true, should have served to put [employer] on notice of [employee's] alleged propensity for using excessive force or not following appropriate protocol."); *B.E. v. Mount Hope High Sch.*, No. 2:11-CV-00679, 2012 WL 3580190, at *7 (S.D. W. Va. Aug. 17, 2012) (Goodwin,

11

C.J.) ("actual notice" of similar instances of predatory behavior sufficient to establish duty to take reasonable supervisory action).

      E.      *Count IV: Intentional Infliction of Emotional Distress*

EMA argues that the Plaintiff fails to establish a claim for intentional infliction of emotional distress because the Plaintiff "lumps all of the defendants together" rather than making "specific allegations against EMA,"[5] and fails to provide sufficient factual support to plausibly plead her claim. (Def.'s Mem. at 6.) The Plaintiff maintains this claim is sufficiently pled.[6] EMA adds in reply that, "as a matter of law," the Plaintiff's allegations do not "reach a level sufficient to be actionable under West Virginia law" because she does not describe any behavior by EMA that "could reasonably be characterized" as satisfying the elements of her claim. (Def.'s Reply at 7.)

In West Virginia, a plaintiff must allege the following to state a claim for intentional infliction of emotional distress:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

---

[5] Although the Amended Complaint's near-exclusive reference to the Defendants in the plural sense does not quite rise to the level of "shotgun pleading," the Court acknowledges EMA's frustration with the lack of clarity regarding specific conduct for which the Plaintiff seeks redress. *See Knouse v. Primecare Med. of W. Virginia*, 333 F. Supp. 3d 584, 592 (S.D. W. Va. 2018) (Goodwin, J.) ("A complaint that 'fails to articulate claims with sufficient clarity to allow the defendant[s] to frame a responsive pleading ... or [one in which] it is virtually impossible to know which allegations of fact are intended to support which claims for relief' constitutes a 'shotgun pleading.'" (internal citation omitted)).

[6] The Court does not engage in the parties' quarrel over the Plaintiff's assertion that EMA "makes no argument" regarding the first, third, and fourth elements of this claim. (*See* Pl.'s Resp. at 8; Def.'s Reply at 7.)

*Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 425 (W. Va. 1998)). "Whether the alleged conduct may be reasonably considered outrageous is a threshold question for the court"; whether the conduct "is in fact outrageous is a question for the jury." *Gilco v. Logan Cnty. Commission*, No. 11–32, 2012 WL 3580056, at *5 (S.D. W. Va. Aug. 17, 2012) (Copenhaver, J.) (citing Syl. Pt. 4, *Alcon Labs*, 504 S.E.2d at 419). "It is difficult to overstate the high burden of proof required to sustain a tort claim for intentional infliction of emotional distress." *Pegg v. Herrnberger*, 845 F.3d 112, 122 (4th Cir. 2017). It only covers conduct "so outrageous in character, so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Keyes v. Keyes*, 193 S.E.2d 693, 696 (W. Va. 1990) (quoting *Harless v. First Nat'l Bank*, 289 S.E.2d 692, 703–04 n.20 (W. Va. 1982)).

Viewed objectively and in the light most favorable to the Plaintiff, her intentional infliction of emotional distress claim against EMA does not meet the legal threshold. The Plaintiff alleges that the "Defendants permitted a loaded firearm to be accessible from the passenger compartment of their motor vehicle, resulting in the shooting death of [Mr. Sammons]." (Pl.'s Resp. at 8.) Actors in positions of actual or apparent authority have been held liable for "extreme abuse of their position." *See* Restatement (Second) of Torts § 46 (1965). However, the Plaintiff's apparent allegation of EMA's general inaction is not sufficiently extreme and outrageous to support a direct claim against EMA. *See Herrnberger*, 845 F.3d 112 at 122 (listing examples of conduct found sufficient or insufficient to support a claim for intentional infliction of emotional distress in West Virginia). Moreover, although "[c]ourts have struggled to determine whether conduct may reasonably be considered outrageous," *Lambert v. Hall*, No. 5:17-cv-01189, 2017 WL 2873050, at *4 (S.D. W. Va. July 5, 2017) (Berger, J.), "conduct that is merely annoying, harmful of one's

13

rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct," *Courtney v. Courtney*, 413 S.E.2d 418, 423–24 (W. Va. 1991). Accordingly, the Court finds that the Plaintiff has not pled facts sufficient to plausibly allege that EMA acted recklessly or with the intention of inflicting emotional distress on Mr. Sammons.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *EMA Express LLC's Motion to Dismiss Plaintiff's Amended Complaint* (Document 38) be **GRANTED** as to EMA's direct liability alleged in all Counts and **DENIED** as to EMA's vicarious liability for negligence and gross negligence alleged in Count One and Count Two. Specifically, the Court **ORDERS** that Counts One through Four be **DISMISSED WITHOUT PREJUDICE** as to EMA insofar as they allege direct liability. Lastly, the Court **ORDERS** that the Show Cause Order (Document 44) be **DISCHARGED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: November 16, 2023

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA