IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

KIM SAMMONS, *individually and as the
Executrix of the Estate of Eric Sammons*,

          Plaintiff,

v.                                       CIVIL ACTION NO. 2:23-cv-00236

JAMES ARMSTRONG, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *EMA Express, LLC's Motion for Summary Judgment* (Document 74), the *Memorandum of Law in Support of Defendant EMA Express, LLC's Motion for Summary Judgment* (Document 75), the *Plaintiff's Response in Opposition to Defendant EMA Express, LLC's Motion for Summary Judgment* (Document 81) and the Affidavit of Amanda J. Taylor, Esq. (Document 81-1), and *EMA Express, LLC's Reply to Plaintiff's Response in Opposition to Defendant EMA Express, LLC's Motion for Summary Judgment* (Document 82), as well as all attached exhibits. For the reasons stated herein, the Court finds that the motion should be denied.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The Plaintiff is Kim Sammons, Executrix of the Estate of her late husband, Eric Sammons. The Defendants are James Armstrong, Armstrong Trucking 1, LLC ("Armstrong Trucking"), and EMA Express, LLC ("EMA"). Mr. Sammons was a West Virginia citizen. Mr. Armstrong is a

Florida resident and citizen, Armstrong Trucking's members are citizens of the state of Florida, and EMA's members are solely citizens of Florida.

On October 7, 2021, Mr. Sammons was driving on U.S. Route 52 in a red Chevrolet Cruze. As he turned onto U.S. Route 119, he was cut off by Mr. Armstrong, who had been driving northbound on Route 119 in a white tractor-trailer. At some juncture, both vehicles stopped on Route 119, at which time Mr. Sammons exited his vehicle and approached Mr. Armstrong's vehicle. Mr. Armstrong rolled down his window and the two men began arguing. Sometime thereafter, Mr. Armstrong retrieved a pistol from inside the cab of his vehicle and fired one shot into Mr. Sammons' upper chest, killing him. Relevant here, the parties dispute whether Mr. Armstrong was operating his tractor-trailer as an employee, agent, or representative of Defendant EMA, or whether he was an independent contractor. The Plaintiff contends that Defendants EMA and Armstrong Trucking knew or should have known that Mr. Armstrong possessed and carried a loaded and accessible firearm in the passenger compartment of his vehicle, which firearm was not contained in a locked container other than the glove compartment or console. The Plaintiff brought claims against all Defendants for negligence (Count I); gross negligence (Count II); negligent hiring, supervision, and retention (Count III); and intentional infliction of emotional distress (Count IV). By Memorandum Opinion and Order entered on November 16, 2023, the Court dismissed all claims asserted directly against EMA but found further factual development necessary as to the Plaintiff's vicarious liability claims regarding Counts I and II. (Document 49.) Accordingly, relevant here are the Plaintiff's claims that EMA is vicariously liable for Mr. Armstrong's alleged negligence and gross negligence as his employer.

**STANDARD OF REVIEW**

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at

3

\*3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, \*3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

## DISCUSSION

EMA contends summary judgment is appropriate as to the Plaintiff's vicarious liability claims because Mr. Armstrong was an independent contractor and EMA is not liable for his negligent conduct under West Virginia law. Specifically, EMA argues that it "did not have the power of control over Mr. Armstrong sufficient to establish a master-servant relationship instead of an independent contractor relationship." (EMA Mem. at 5) (Document 75.) It notes that Mr. Armstrong signed an Independent Contractor's Agreement ("ICA") (Document 82-1) with EMA on June 4, 2019, which provided that Mr. Armstrong would be considered an independent contractor while working for EMA, and that Mr. Armstrong had the right to decline any load offered by EMA without facing negative repercussions. (EMA Mem. at 5.) EMA adds that Mr.

Armstrong prepared and kept his own records detailing his route, and that the ICA "did not include a non-compete clause or reference any employee manuals which Mr. Armstrong would be expected to abide by." (*Id.*)  Mr. Armstrong further attests that he was an independent contractor on the date of the incident.  He states that he owned the tractor trailer that he used to drive his daily route, that he "did not regularly communicate with EMA regarding [his] route or [his] whereabouts," and that "EMA did not control the means and method by which [he] carried out the day-to-day operations of [his] business." (Armstrong Aff. at ¶¶ 4–6) (Document 74-2.)

The Plaintiff urges the Court to deny summary judgment because EMA has failed to carry its burden under the relevant standard, "or, in the alternative, [deny judgment] as premature in the absence of further discovery" pursuant to Federal Rule of Civil Procedure 56(d). (Pl.'s Resp. at 2) (Document 81.)  She maintains that whether EMA exercised sufficient power of control over Mr. Armstrong is a fact-dependent inquiry requiring additional discovery to be addressed and resolved.  She notes that discovery is ongoing, and the parties are "actively in the process of scheduling depositions." (*Id.*; *see also* Taylor Aff.)[1]  Regarding EMA's burden, the Plaintiff asserts that the ICA and Mr. Armstrong's affidavit "do little to definitively establish the facts which EMA alleges support its motion." (*Id.* at 4.)  The Plaintiff contends Mr. Armstrong's affidavit "merely contains formulaic recitations" regarding his independent contractor status, and that his "characterization and labels … regarding his relationship with EMA are not determinative." (*Id.*)  She argues that the terms of the ICA "create[] additional factual questions [regarding the level of

---

1 The Court notes that all discovery is to be completed by September 16, 2024, and that the last date to complete depositions has been extended through October 7, 2024. (Document 105.)  A review of the docket indicates that depositions of Mr. Armstrong on behalf of Armstrong Trucking and of EMA have been noticed for September 4 and 5, 2024, respectively. (Documents 103, 104.)

control by EMA over Mr. Armstrong's work] which merit denial of … summary judgment or additional discovery." (*Id.*) Specifically, she points to the fact that

> the agreement (1) required Mr. Armstrong to maintain a copy of the agreement in the leased equipment for the duration of the lease; (2) gave EMA exclusive possession, control and use of the equipment and required EMA to assume complete responsibility for operation of the equipment, for the duration of the lease; (3) required Mr. Armstrong to prepare and keep records covering each trip for which equipment was used in EMA's service and to have present on the tractor trailer documents identifying the lading and acknowledging that the transport was performed under EMA's authority; (4) required EMA to keep Mr. Armstrong's equipment in "reasonably constant use"; (5) required EMA to calculate mileage at the time of dispatch; (6) required EMA to bear operational expenses; (7) required EMA to provide a written itemization of deductions for cargo or property damage to be taken from Mr. Armstrong's compensation; (8) [required] EMA to pay the cost of fines for overweight and oversize trailers.

(*Id.*) She also suggests that a trier of fact could find EMA vicariously liable for Mr. Armstrong's propensity to carry a loaded firearm in his vehicle pursuant to the "illegal conduct or activity" exception to the independent contractor defense but appears to argue that further discovery is needed to determine whether EMA sanctioned such activity. (*See id.* at 5–6.)

EMA maintains that the Plaintiff has not established a genuine issue of material fact to defeat summary judgment. It appears to argue that the contract provisions in its Agreement with Mr. Armstrong cannot be used to determine the existence of an employer-employee relationship because it was required to include such provisions "to comply with federal law." (EMA Reply at 2–4.) It asserts that "[n]one of the provisions which Plaintiff points out overcome the evidence that EMA has produced which illustrates that Mr. Armstrong was an independent contractor." (*Id.* at 4.) Finally, EMA argues that the "illegal conduct or activity" exception does not apply here because, to the extent the Plaintiff contends Mr. Armstrong's possession of a firearm in his vehicle was illegal, "it is not illegal to carry a gun in a commercial motor vehicle in West Virginia,"

6

and "Mr. Armstrong had a Florida concealed weapon license" which is recognized in West Virginia. (*Id.* at 5.)

Turning to the question of whether a jury could find EMA vicariously liable for Mr. Armstrong's alleged negligent conduct, the Court previously found with respect to vicarious liability that

> The universally recognized rule [in West Virginia] is that an employer is liable to a third person for any injury to his person or property which results proximately from tortious conduct of an employee acting within the scope of his employment. The negligent or tortious act may be imputed to the employer if the act of the employee was done in accordance with the expressed or implied authority of the employer.

*Courtless v. Jolliffe*, 507 S.E.2d 136, 140 (W. Va. 1998) (quoting *Griffith v. George Transfer & Rigging, Inc.*, 201 S.E.2d 281, 287 (W. Va. 1973)). Therefore, the threshold question is whether an employer-employee relationship or an independent contractor relationship existed between EMA and Mr. Armstrong. The following four factors must be present to establish the existence of a master-servant (or employer-employee) relationship for purposes of vicarious liability: "(1) Selection and engagement of the servant; (2) Payment of compensation; (3) Power of dismissal; and (4) Power of control." Syl. Pt. 5, *Paxton v. Crabtree*, 400 S.E.2d 245 (W. Va. 1990). The West Virginia Supreme Court of Appeals has held that "[t]he first three factors are not essential to the existence of the relationship; the fourth, the power of control, is determinative." *Id.* Thus, the party claiming an independent contractor defense bears the burden of establishing that it "neither controlled nor had the right to control the work" of the alleged independent contractor. Syl. Pt. 1, *Sanders v. Georgia-Pac. Corp.*, 225 S.E.2d 218 (W. Va. 1976). A defendant may still exercise "broad general power of supervision and control as to the results of the work … without changing the relationship" or the duties arising therefrom. Syl. Pt. 4, *Shaffer v. Acme Limestone*

*Co.*, 524 S.E.2d 688 (W. Va. 1999). However, "if there is a conflict in the evidence and there is sufficient evidence to support a finding of the jury, the determination of whether an independent contractor relationship existed is a question for jury determination." Syl. Pt. 1, *Sanders*, 225 S.E.2d.

The Court finds that EMA has failed to demonstrate that no genuine dispute remains as to whether it had the power of control over Mr. Armstrong's work. Here, the only evidence EMA offers to support the existence of an independent contractor relationship is the ICA and Mr. Armstrong's affidavit. However, the terms of a contract and an affidavit providing a formulaic recitation of the legal standard are not sufficient to carry EMA's burden for summary judgment when the nature of the parties' relationship is a multi-faceted, fact-intensive inquiry. *See id.* at 222 (1976) ("[N]o single item of proof is generally dispositive of the issue. Many facets of the alleged relationship are significant."). Indeed, viewing the evidence in the light most favorable to the Plaintiff, the express terms of the ICA alone could be read to impose a level of supervision by EMA over Mr. Armstrong's work consistent with that of an employer-employee relationship.[2] Accordingly, viewing all available evidence in the light most favorable to the Plaintiff, the Court finds that a genuine issue of material fact remains as to the nature of the Defendants' relationship, precluding summary judgment.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *EMA Express, LLC's Motion for Summary Judgment* (Document 74) be **DENIED**.

---

2 EMA contends these terms were included only to comply with federal regulations. However, EMA offers no authority to suggest that compliance with federal regulations negates the significance of provisions which may be indicative of an employer-employee relationship.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: August 21, 2024

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA